IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 19-cr-00325-WJM-1

UNITED STATES OF AMERICA,

      Plaintiff,

v.

**1. JOSE ANTONIO CORRAL**,
2. GIL SANTINI JESUS OTHON,
3. CYNTHIA DAWN ALLEN,
4. CARLTON LEROY ALLEN, and
5. ASNLEY NAOMI RANEE REDE,

      Defendants.

---

## MOTION TO RECONSIDER DETENTION ORDER PURSUANT TO 18 U.S.C. §3142(i)

---

Defendant Jose Antonio Corral ("Mr. Corral"), by and through his appointed counsel, Jesse A. Glassman, respectfully motions the Court to reconsider the Detention Order by the Magistrate Judge on December 4, 2019 pursuant to 18 U.S.C. §3142(i). Doc. 118.[1] Mr. Corral requests a hearing on this motion. In support, Mr. Corral states:

### STATEMENT OF CONFERRAL

The parties have conferred. The government opposes the relief requested in this motion.

### INTRODUCTION

Mr. Corral did not contest detention.  The statutory presumption of detention is applicable to Mr. Corral.  At the time of the detention hearing, COVID-19 did not exist. The World Health

---

[1] This and all references to "Doc." numbers in this pleading refer to ECF Docket Numbers for Dist. Colo. 19-cr-325-WJM.

Organization declared COVID-19 a pandemic.  Jails and prisons, despite the best efforts of prison management, are fast becoming petri dishes for incubating and spreading the virus. There have been reported COVID-19 cases in the GEO Detention Center where Mr. Corral is housed. Taken together, these circumstances present a "compelling reason" for release of a detainee under 18 U.S.C. §3142(i).

## FACTUAL AND PROCEDURAL BACKGROUND

After Mr. Corral's detention hearing, COVID-19 caused a global pandemic.[2] The world remains in the throes of this pandemic. The United States has more confirmed cases than any other country.[3]   Colorado has over 2,300 confirmed cases.[4] Government officials at every level have declared states of emergency, including in Colorado.[5]

Indeed, as the Second Circuit recently explained, COVID-19 presents a "dramatic challenge" and "has prompted a rapid reorientation of workplace practices and social life in support of public health. The impact of this recent emergency on jail and prison inmates, their counsel (in the lead, the Federal Defenders), the United States Attorneys, and the BOP, including the individual Wardens and the personnel of each facility, is just beginning to be felt. Its likely course we cannot foresee. Present information strongly suggests, however, that it may be grave and

---

[2] *Coronavirus Disease (COVID-19) Pandemic*, World Health Organization (March 10, 2020), https://www.who.int/emergencies/diseases/novel-coronavirus-2019.
[3] *Coronavirus COVID-19 Global Cases by the Center for Systems Science and Engineering (CSSE) at Johns Hopkins University (JHU)*, March 27, 2020, https://www.arcgis.com/apps/opsdashboard/index.html#/bda7594740fd40299423467b48e9ecf6 (updated regularly).
[4] *Coronavirus in the U.S.: Latest Map and Case Count*, New York Times (March 30, 2020), https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html?action=click&module=RelatedLinks&pgtype=Article (updated regularly).
[5] *Emergency Declarations Issued Across US Due to Coronavirus Vary Widely in Scope*, Colorado Public Radio (March 12, 2020), https://www.cpr.org/2020/03/12/emergency-declarations-being-issued-across-u-s-vary-widely-in-scope/.

enduring." *Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 2020 WL 1320886, at *12 (2nd Cir. March 20, 2020).

According to the Bureau of Prisons website, 28 inmates and 24 BOP staff members have tested positive for coronavirus.[6] However, the BOP's inmate and staff screening protocols do not include testing for COVID-19, and the country continues to experience a devastating shortage of tests and lengthy delays in receiving results. For these reasons, BOP reports regarding confirmed positive tests, like all such reports, *underrepresent* the number of people that have the virus, likely by significant amounts.[7] BOP's own staff have described the federal prison and detention system as "underprepared for the crisis and already on the brink of disaster."[8] Descriptions of conditions in BOP facilities around the country corroborate this bleak assessment.[9] Symptomatic inmates in BOP facilities with confirmed cases are not being tested, quarantined or treated, at least one facility is still placing inmates in groups of 250 for recreation, and a New York facility ran out of soap in the staff restroom. *Id*.

There is no known cure or vaccine for COVID-19. Medical experts around the world have repeatedly and unanimously stated that the most effective way to avoid contracting the virus is to

---

[6] *See* https://www.bop.gov/coronavirus/ (COVID-19 Tested Positive Cases) (updated by the BOP daily at 3:00 p.m.)

[7] *State Asks Hospitals Not to Release Coronavirus Testing Totals*, Boston Business Journal (March 20, 2020), https://www.bizjournals.com/boston/news/2020/03/20/state-asks-hospitals-not-to-release-coronavirus.html ("...under-reporting is on top of testing shortages, which have limited tests only to patients who are symptomatic.").

[8] *Sick Staff, Inmate Transfers, and No Tests: How the U.S. is Failing Federal Inmates as Coronavirus Hits*, Keegan Hamilton, Vice News (March 24, 2020), https://www.vice.com/en_us/article/jge4vg/sick-staff-inmate-transfers-and-no-tests-how-the-us-is-failing-federal-inmates-as-coronavirus-hits

[9] *Federal Prisons Struggle to Combat COVID-19 Fears*, Associated Press (March 27, 2020), https://www.usnews.com/news/health-news/articles/2020-03-27/federal-prisons-struggle-to-combat-growing-covid-19-fears.

practice "social distancing" by avoiding coming within six feet of other people, including those who show no symptoms of illness. Because of those recommendations, government officials throughout the world have ordered people to stay home with exceptions only for essential activities. Medical experts have warned that inmates in America's detention facilities and prisons are at high risk to contract COVID-19 because they are not able to practice social distancing within those facilities.

**Courts Agree that the Risk of Contracting COVID-19 While in Custody Warrants Release of Pretrial Detainees in Many Cases.**

On March 16, 2020, Dr. Chris Beyrer, an epidemiologist and infectious disease specialist at Johns Hopkins University, released an affidavit stating, "it is…an urgent priority in this time of national public health emergency to reduce the number of persons in detention as quickly as possible."[10] Dr. Beyrer added,

> Given the experience in China as well as the literature on infectious diseases in jail, an outbreak of COVID-19 among the U.S. jail and prison population is likely. Releasing as many inmates as possible is important to protect the health of inmates, the health of correctional facility staff, the health of health care workers at jails and other detention facilities, and the health of the community as a whole.

*Id.*

On March 18, 2020, Dr. Rachael Bedard, a geriatrician at New York's Rikers Island correctional facility stated,

> We need to take the unprecedented step TODAY of providing urgent release to everyone in the jails who is at risk of serious morbidity and mortality from COVID. It cannot be kept out and once it's in, it will spread like wildfire.[11]

---

[10] *The Case for Depopulating our Jails, Prisons*, Chelsea Kline, Daily Hampshire Gazette (March 27, 2020), https://www.gazettenet.com/Columnist-Chelsea-Kline-33573354.
[11] *A Rikers Island Doctor Speaks Out to Save Her Elderly Patients from the Coronavirus*, Jennifer Gonnerman, The New Yorker (March 20, 2020), https://www.newyorker.com/news/news-desk/a-rikers-island-doctor-speaks-out-to-save-her-

Dr. Bedard added, "a jail is a perfect setup for an outbreak." *Id.*

On March 23, 2020, the Center for Disease Control and Prevention (CDC) acknowledged that jails and prisons "present unique challenges for control of COVID-19 transmission among incarcerated/detained persons, staff, and visitors."[12] Specifically, the CDC noted that many detention conditions create a heightened risk of danger to detainees including low capacity for patient volume, insufficient quarantine space, insufficient on-site medical staff, highly congregational environments, inability of most patients to leave the facility, and limited ability of prisoners to exercise effective disease prevention measures (e.g. social distancing and frequent hand-washing). *Id.*, at p2. The CDC also points out that "[b]ecause many individuals infected with COVID-19 do not display symptoms, the virus could be present in facilities before cases are identified." *Id.*, at p8.

On March 30, 2020, the New York Times reported "the coronavirus is spreading quickly in America's jails and prisons, where social distancing is impossible and sanitizer is widely banned, prompting authorities across the country to release thousands of inmates in recent weeks to try to slow the infection, save lives, and preserve medical resources."[13]

---

elderly-patients-from-the-coronavirus; *see also*
https://twitter.com/rachaelbedard/status/1240255658949251073 (last visited March 27, 2020).
[12] Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities, Center for Disease Control (March 23, 2020), at p2,
https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html.
[13] *"Jails are petri dishes:" Inmates Freed as the Virus Spreads Behind Bars*, New York Times (March 30, 2020), at https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html.

Many federal judges are listening to the experts, especially in cases involving detainees,
like Mr. Corral, who have preexisting medical conditions that make them particularly vulnerable
to COVID-19. Here are just some recent, notable examples:

a. *United States v Garlock*, No. 18-CR-00418-VC-1, 2020 WL 1439980, at *1 (N.D.
Cal. Mar. 25, 2020) (citing "chaos" inside federal prisons in sua sponte order
extending time to self-surrender: "[b]y now it almost goes without saying that we
should not be adding to the prison population during the COVID-19 pandemic if it
can be avoided.");

b. *United States v. Perez*, No. 19 CR. 297 (PAE), 2020 WL 1329225, at *1 (S.D.N.Y.
Mar. 19, 2020) (releasing defendant due to the "heightened risk of dangerous
complications should he contract COVID-19");

c. *United States v. Stephens*, 2020 WL 1295155, __F. Supp. 3d__ (S.D.N.Y. Mar. 19,
2020) (releasing defendant in light of "the unprecedented and extraordinarily
dangerous nature of the COVID-19 pandemic");

d. *In re Manrigue*, 2020 WL 1307109 (N.D. Cal. Mar. 19, 2020) ("The risk that this
vulnerable person will contract COVID-19 while in jail is a special circumstance
that warrants bail.");

e. *United States v. Matthaei*, No. 1:19-CV-00243-BLW, 2020 WL 1443227, at *1 (D.
Idaho Mar. 16, 2020) (extending self-surrender date by 90 days in light of COVID-
19);

f. *United States v. Barkman*, 2020 U.S. Dist. LEXIS 45628 (D. Nev. Mar. 17, 2020)
(suspending intermittent confinement because "[t]here is a pandemic that poses a
direct risk if Mr. Barkman . . . is admitted to the inmate population of the Wahoe
County Detention Facility");

g. *United States v. Copeland,* No. 2:05-cr-135-DCN (D.S.C. Mar. 24, 2020) (granting
compassionate release to defendant in part due to "Congress's desire for courts to
release individuals the age defendant is, with the ailments that defendant has during
this current pandemic");

h. *Xochihua-James v. Barr*, No. 18-71460 (9th Cir. Mar. 23, 2020) (unpublished) (*sua
sponte* releasing detainee from immigration detention "[I]n light of the rapidly
escalating public health crisis");

i. *United States v. Jaffee*, No. 19-cr-88 (D.D.C. Mar. 26, 2020) (releasing defendant
with criminal history in gun & drug case, citing "palpable" risk of spread in jail and
"real" risk of "overburdening the jail's healthcare resources"; "the Court is . . .

6

convinced that incarcerating the defendant while the current COVID-19 crisis continues to expand poses a greater risk to community safety than posed by Defendant's release to home confinement");

j. *Basank v. Decker*, No. 20-cv-2518 (S.D.N.Y. March 26, 2020) (releasing high-risk plaintiffs because "the nature of detention facilities makes exposure and spread of [coronavirus] particularly harmful.");

k. *United States v. Grobman*, No. 18-cr-20989, Dkt. No. 397 (S.D. Fla. Mar. 29, 2020) (releasing defendant convicted after trial of fraud scheme in light of "extraordinary situation of a medically-compromised detainee being housed at a detention center where it is difficult, if not impossible, for [the defendant] and others to practice the social distancing measures which government, public health and medical officials all advocate");

l. *United States v. Kennedy*, No. 5:18-cr-20315, Dkt. No. 77 (E.D. Mich. Mar. 27, 2020) (district court revokes Magistrate's detention order under 18 U.S.C. §3145(b) for defendant who had violated pretrial release because "the COVID-19 pandemic constitutes an independent compelling reason" for temporary release and "is *necessary* for Defendant to prepare his pre-sentence defense");

m. *United States v. Powell*, No. 1:94-cr-316-ESH (D.D.C. Mar. 28, 2020) (granting unopposed motion for compassionate release in light of COVID-19 and finding it "would be futile" to require defendant to first exhaust in light of open misdemeanor case);

n. *United States v. Mclean,* No. 19-cr-380, Dkt. No. (D.D.C. Mar. 28, 2020) ("As counsel for the Defendant candidly concedes, the facts and evidence that the Court previously weighed in concluding that Defendant posed a danger to the community have not changed – with one exception. That one exception – COVID-19 – however, not only rebuts the statutory presumption of dangerousness, *see* 18 U.S.C. §3142(e), but tilts the balance in favor of release.")

In addition, in the Central District of California, the District Court denied a defendant's motion to reconsider detention, but invited the defendant to apply for *ex parte* reconsideration of that ruling in light of the COVID-19 pandemic. The court specifically invited the defendant to seek release based on (1) the court's authority to grant release under 18 U.S.C. §3142(i), and (2) the existence of a third-party custodian to whom the defendant could be released. *United States v. Avenatti*, No. 19-CR-00061-JVS, ECF Doc. 123 (C.D. Cal. March 25, 2020).

7

The Alaska Court of Appeals reversed summary denials like those issued by the Magistrate Judge in this case and ordered that defendants must receive "hearings at which an individualized assessment of their bail release proposals, in the context of the COVID-19 pandemic, can occur." *Karr v. State*, 2020 WL 1456469, at *4 (Ct. App. Alaska, March 24, 2020). That Court held

> …the trial court's analysis of the risk to public safety and the risk of flight posed by releasing a defendant into the community is necessarily different now than it was several weeks ago… Incarcerating a defendant under conditions that do not permit compliance with widespread health directives designed to halt the spread of the virus poses significant health risks not only to other inmates and to the correctional facility staff, but also to the rest of the public. Experts have warned that the spread of the virus in our society – including in the jails – may soon overwhelm our health care system.
>
> ***
>
> Courts must reevaluate the flight risk and safety risk posed by releasing a defendant into a community which now has fewer open businesses, fewer opportunities for travel, and more people staying at home. We therefore conclude that the COVID-19 pandemic qualifies as 'new information' for purposes of [Alaska's bail statute] and that trial courts erred by declining to grant the Appellants a bail review hearing.

*Id*., at *2-3 (footnotes omitted).

As the Alaska Court of Appeals stated, the spread of coronavirus in jails and prisons not only places inmates at risk, it heightens the risk to correctional staff and the public at large.

**Leaders in Law and Medicine Have Called Upon the President to Reduce the Federal Prison and Pretrial Detention Population to Prevent the Catastrophic Spread of COVID-19.**

On March 26, 2020, Attorney General William Barr issued a memorandum directing the BOP to "prioritize the use of your various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic." This memo provides six factors relevant to assessing requests for transfer to home confinement:

1) The age and vulnerability of the inmate to COVID-19, in accordance with CDC guidelines;

2) The security level of the facility currently holding the inmate;

3) The inmate's conduct in prison;

4) The inmate's score under PATTERN;

5) Whether the inmate has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety; and

6) The inmate's crime of conviction, and assessment of the danger posed by the inmate to the community.

*Id.*

Mr. Corral was born in 1991, and he does not have any specific medical ailments. However, undersigned counsel would argue that every inmate is vulnerable to the virus. Regarding the second factor, he has followed all rules of the GEO Detention Facility during his time there. The third and fourth factors do not enter into the analysis in Mr. Corral's case because he is a pretrial detainee.  Mr. Corral does not have family in Colorado.  However, his family is very supportive and would help in any way to obtain a residence for him in the Denver metro area pending this case.

The sixth factor contains two parts. First, Mr. Corral is presumed innocent, a fact that strongly supports ordering home confinement. If people convicted of federal crimes and sentenced to prison are being considered for home confinement, then surely pretrial detainees who are presumed innocent should be prioritized for release. Second, although the Magistrate Judge found that Mr. Corral's release would pose a danger to the community, the changed circumstances since that ruling reduce the community safety risk associated with releasing Mr. Corral and increase the community safety risk created by his detention.

## CONCLUSION

For the reasons stated herein, Mr. Corral asks this Court to reconsider the detention order under 18 U.S.C. §3142(i).

Respectfully Submitted,
s/ Jesse A. Glassman
Jesse A. Glassman
Attorney for Defendant
Reg. #37787
Glassman & Faye, PC
1600 Stout Street
Suite 1400
Denver, CO 80202
Telephone: 720-345-8444
Fax: 303-265-9481
Email: Jesse@GlassmanFaye.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 31, 2020 I electronically filed the foregoing *Defendant's Motion to Reconsider Detention* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Peter McNeilly, AUSA – peter.mcneilly@usdoj.gov

s/ Jesse A. Glassman
Jesse A. Glassman
Attorney for Defendant

11